UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| **RED DEVIL, INC.,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| v. ) | Case No. 25-CV-0451-CVE-SH |
| ) | |
| **CONTRACTOR TOOL SUPPLY, INC.,** ) | |
| ) | |
| **Defendant.** ) | |

**OPINION AND ORDER**

Now before the Court is Defendant CTS's Rule 12(b)(2) and 12(b)(5) Motion to Dismiss, or, Alternatively, to Transfer to the Middle District of Florida, and Incorporated Brief (Dkt. # 11). Defendant Contractor Tool Supply, Inc. (CTS) argues that the case should be dismissed due to improper service of process and lack of personal jurisdiction over CTS. CTS also argues that the Northern District of Oklahoma is not a convenient forum for this case, and CTS asks the Court to transfer the case to the United States District Court for the Middle District of Florida. Plaintiff Red Devil, Inc. (Red Devil) responds that CTS knowingly engaged in business with an Oklahoma company, and CTS has sufficient minimum contacts with Oklahoma for this court to exercise personal jurisdiction over CTS. Dkt. # 17, at 4-5. Red Devil also argues that it properly served CTS by sending a summons and petition to CTS' registered agent by certified mail, but Red Devil has failed to respond to CTS's argument that the case should be transferred to Florida for the convenience of the parties.

I.

On July 23, 2025, Red Devil filed a one page petition in Tulsa County District Court seeking to recover on an unpaid account. Dkt. # 2-1, at 2. Invoices attached to the petition showed that the

items purchased by CTS were sent to Leesburg, Florida, and the parties do not dispute that Red Devil is a citizen of Oklahoma for the purpose of diversity jurisdiction. Dkt. # 2, at 1. The amount in controversy based on invoices attached to the petition is approximately $84,800. Dkt. # 2-1, at 4-9. Red Devil mailed a petition and summons to a law firm in Tallahassee, Florida by certified mail return receipt requested, and the mail was received by Michelle Montanaro of the law firm Lawson Huck Gonzalez, PLLC. The president of CTS, Matthew King, Jr, states that the law firm was not authorized to accept service on behalf of CTS, even though the law firm is listed as CTS' registered agent for service on the official website of the Florida Secretary of State. Dkt. # 11-1, at 2-3.

## II.

CTS argues that it does not have sufficient minimum contacts with Oklahoma for this Court to exercise personal jurisdiction over it, because all of the goods purchased by CTS were delivered to Florida and the parties did not have an agreement to litigate disputes arising out of unpaid invoices in Oklahoma. Dkt. # 11, at 3. CTS also argues that the case should be dismissed due to improper service of process or, in the alternative, CTS contends that Oklahoma has only a minimal connection to the lawsuit and the case should be transferred to the Middle District of Florida under 28 U.S.C. § 1404(a).

### A.

The Court will initially consider CTS' argument that the Court lacks personal jurisdiction over it. When a defendant moves to dismiss for lack of personal jurisdiction under Rule 12(b)(2), the plaintiff bears the burden of establishing that the Court has personal jurisdiction over the defendant. OMI Holdings, Inc. v. Royal Ins. Co. of Canada, 149 F.3d 1086, 1091 (10th Cir. 1998). "When a district court rules on a Fed. R. Civ. P. 12(b)(2) motion to dismiss for lack of personal

jurisdiction without holding an evidentiary hearing, . . . the plaintiff need only make a prima facie showing of personal jurisdiction to defeat the motion." Id. (citations omitted). "The plaintiff may make this prima facie showing by demonstrating, via affidavit or other written materials, facts that if true would support jurisdiction over the defendant." Id. at 1091. "In order to defeat a plaintiff's prima facie showing of jurisdiction, a defendant must present a compelling case demonstrating 'that the presence of some other considerations would render jurisdiction unreasonable.'" Id. (quoting Burger King Corp. v. Rudzewicz, 471 U.S. 462, 477 (1985)). The allegations of the complaint must be accepted as true to the extent they are uncontroverted by a defendant's affidavit. Taylor v. Phelan, 912 F.2d 429, 431 (10th Cir. 1990). If the parties provide conflicting affidavits, all factual disputes must be resolved in the plaintiff's favor. Id.

For a court to exercise personal jurisdiction over a nonresident defendant in a diversity action, the plaintiff must demonstrate the existence of every fact required to satisfy both the forum's long-arm statute and the Due Process Clause of the United States Constitution. See OKLA. STAT. tit. 12, § 2004(F). "Because Oklahoma's long-arm statute permits the exercise of jurisdiction that is consistent with the United States Constitution, the personal jurisdiction inquiry under Oklahoma law collapses into the single due process inquiry." Intercon, Inc. v. Bell Atl. Internet Solutions, Inc., 205 F.3d 1244, 1247 (10th Cir. 2000) (citing Rambo v. Am. S. Ins. Co., 839 F.2d 1415, 1416 (10th Cir. 1988)); see also Hough v. Leonard, 867 P.2d 438, 442 (Okla. 1993).

"Due process requires that the nonresident defendant's conduct and connection with the forum state are such that the nonresident could reasonably anticipate being haled into court in that state." Conoco, Inc. v. Agrico Chem. Co., 115 P.3d 829, 835 (Okla. 2004) (citing World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 297 (1980)). "The Due Process Clause permits the

exercise of personal jurisdiction over a nonresident defendant 'so long as there exist minimum contacts between the defendant and the forum State.'" Intercon, 205 F.3d at 1247 (quoting World-Wide Volkswagen, 444 U.S. at 291). The existence of such minimum contacts must be shown to support the exercise of either general jurisdiction or specific jurisdiction. Id. "When a plaintiff's cause of action does not arise directly from a defendant's forum related activities, the court may nonetheless maintain general personal jurisdiction over the defendant based on the defendant's business contacts with the forum state." Id. (citing Helicopteros Nacionales de Colombia v. Hall, 466 U.S. 408, 414-16 & n.9 (1984)). Alternately, a court "may, consistent with due process, assert specific jurisdiction over a nonresident defendant 'if the defendant has purposefully directed his activities at the residents of the forum, and the litigation results from alleged injuries that arise out of or relate to those activities.'" Id. (quoting Burger King Corp., 471 U.S. at 472).

Red Devil does not contend that CTS is subject to general personal jurisdiction in Oklahoma and, in such cases, the personal jurisdiction analysis as to specific personal jurisdiction requires the district court to consider three factors: "(1) whether the defendant purposefully directed its activities at residents in the forum state; (2) whether the plaintiff's injury arose from those purposefully directed activities; and (3) whether exercising jurisdiction would offend traditional notions of fair play and substantial justice." Newsome v. Gallacher, 722 F.3d 1257, 1264 (10th Cir. 2013). Red Devil alleges that CTS placed multiple orders for goods with the knowledge that Red Devil is located in Oklahoma, and CTS knew that its alleged failure to refuse to make payments on outstanding invoices owed to Red Devil would cause harm to an Oklahoma business. Dkt. # 17, at 2, 5. CTS knew that the purchased goods would be shipped from Oklahoma and CTS could reasonably have expected to have been sued in Oklahoma if it failed to pay for the goods. Id. at 5.

To establish purposeful direction, plaintiff must show that the defendant engaged in "(a) an intentional action . . . that was (b) expressly aimed at the forum state . . . with (c) knowledge that the brunt of the injury would be felt in the forum state . . . ." Id. at 1265 (quoting Dudnikov v. Chalk & Vermillion Fine Arts, Inc., 514 F.3d 1063, 1070 (10th Cir. 2008)). Red Devil has met its burden to show that CTS purposefully directed its actions toward Oklahoma. CTS acted intentionally by contacting a business located in Oklahoma to purchase goods that would be shipped in interstate commerce, and CTS knew that the effects of its alleged nonpayment for the goods would be felt in Oklahoma. CTS argues that Red Devil's presence by itself does not provide a basis for the Court to exercise personal jurisdiction over it. Dkt. # 11, at 3. However, CTS could reasonably have expected to be haled into court in Oklahoma if a dispute arose out of the transactions for the purchase of goods from a business based in Oklahoma, and CTS has purposefully directed its activities toward Oklahoma in a manner sufficient for the Court to exercise personal jurisdiction over it. Red Devil has also established that its injury arose out of CTS' contacts with Oklahoma.

Red Devil must also show that it would not offend traditional notions of fair play and substantial justice for this Court to exercise jurisdiction over CTS. The Tenth Circuit has provided district courts five factors to consider in determining whether exercise of personal jurisdiction would offend the traditional notions of fair play and substantial justice. The first factor is the burden on defendant of litigating in plaintiffs' chosen forum. OMI Holdings, 149 F.3d at 1095. The Tenth Circuit has said that "[t]his factor is of special significance, because it serves to prevent the filing of vexatious claims in a distant forum where the burden of appearing is onerous." Id. at 1096 (citing World-Wide Volkswagen, 442 U.S. at 292). The second factor analyzes Oklahoma's interest in resolving the parties' dispute. OMI Holdings, 149 F.3d at 1095. Oklahoma "generally has a

'manifest interest' in providing its residents with a convenient forum for redressing injuries inflicted by out-of-state actors." Burger King, 471 U.S. at 474 (quoting McGee v. Int'l Life Ins. Co., 355 U.S. 220, 223 (1957)). The third factor examines "the plaintiff's interest in receiving convenient and effective relief" in the forum state. OMI Holdings, 149 F.3d at 1095. "This factor may weigh heavily in cases where a [p]laintiff's chances of recovery will be greatly diminished by forcing him to litigate in another forum because of that forum's laws or because the burden may be so overwhelming as to practically foreclose pursuit of the lawsuit." Id. at 1097 (citing P. Atl. Trading Co. v. M/V Main Express, 758 F.2d 1325, 1331 (9th Cir. 1985)). The fourth factor concerns "the interstate judicial system's interest in obtaining the most efficient resolution of controversies," which the Tenth Circuit has stated is the examination of "whether the forum state is the most efficient place to litigate the dispute." Id. "Key to the inquiry are the location of witnesses, where the wrong underlying the lawsuit occurred, what forum's substantive law governs the case, and whether jurisdiction is necessary to prevent piecemeal litigation." Benton v. Cameco Corp., 375 F.3d 1070, 1079 (10th Cir. 2004) (quoting OMI Holdings, 149 F.3d at 1097). The fifth and final factor examines "the interests of the several states, in addition to the forum state, in advancing fundamental substantive social policies." OMI Holdings, 149 F.3d at 1097.

    Neither party provides any argument concerning whether it would offend traditional notions of fair play and substantial justice for this Court to exercise personal jurisdiction over CTS, but the Court does not find that these factors support CTS' contention that it would be unreasonable for this Court to exercise personal jurisdiction over CTS. CTS does not face a substantial burden by litigating a breach of contract claim in Oklahoma, and Oklahoma has a strong interest in providing a forum for its residents to seek relief against non-resident defendants who knowingly conduct

business with Oklahoma residents. The Court does not find that either party will be burdened by litigating plaintiff's breach of contract claim in Oklahoma, because Oklahoma has a strong connection to the lawsuit and the parties have not identified any substantial differences between Oklahoma and Florida that would give either side an advantage in a particular forum. As to the interests of the interstate judicial system, this Court can expeditiously resolve the parties' claim and evidence related to the parties' dispute is located in the forum state. Finally, this case involves a simple breach of contract claim and there is no fundamental legal or social policy in dispute that should be litigated in Florida. The due process factors do not weigh against plaintiff's decision to bring this lawsuit in Oklahoma, and CTS has not shown that is due process rights will be violated by having to defend against Red Devil's breach of contract claim in Oklahoma. CTS' request to dismiss this case for lack of personal jurisdiction is denied.

B.

CTS contends that Red Devil has failed to meet its burden to show that service of process was proper, and CTS asks the Court to quash service of process and dismiss the case. Dkt. # 11, at 4. Red Devil responds that it served a law firm that CTS designated as its registered agent to accept service of process, and service of process on the law firm of Lawson Huck Gonzalez, PLLC by registered mail constituted proper service under Oklahoma law. Dkt. # 17, at 3.

In removed cases, federal courts apply the law of the forum state when service of process was attempted prior to removal. Wallace v. Microsoft Corp., 596 F.3d 703, 706 (10th Cir. 2010). Even if service prior to removal was defective, the court may allow a plaintiff to perfect service after removal rather than dismiss the case. 28 U.S.C. § 1448. In this case, Red Devil filed a return of service in state court stating that service of process was mailed to CTS by certified mail restricted

delivery to the law firm of Lawson Huck Gonzalez, PLLC. Dkt. # 2-2, at 2-4. The law firm is listed as the registered agent of CTS on an official website maintained by the Secretary of State of Florida. Dkt. # 17-10. Oklahoma courts do not require strict compliance with statutory service requirements, and service will be sufficient if the service of process substantially complies with Oklahoma law. Hukill v. Oklahoma Native American Domestic Violence Coalition, 542 F.3d 794, 798 (10th Cir. 2008); Graff v. Kelly, 814 P.2d 489, 495 (Okla. 1991). The Court has reviewed the parties' arguments concerning service of process and finds that it is unclear whether CTS was properly served under Oklahoma law. Red Devil has provided evidence that the law firm on which process was served was listed as the registered agent of CTS, but Red Devil has failed to respond to CTS's argument that the person who signed for the certified mail was not authorized to accept service of process. Oklahoma law permits service of process by registered mail, return receipt requested and delivery restricted to the addressee, but CTS disputes whether the person who signed for the registered mail was authorized to accept service on behalf of CTS. OKLA. STAT. tit. 12, § 2004(C)(2)(C); Dkt. # 11, at 4. However, even if CTS is correct that service was improper, the Court finds that dismissal of this case is not an appropriate remedy, as it is apparent that CTS has actual notice of Red Devil's lawsuit. Instead, the Court will quash the original service of process and direct Red Devil to re-serve process on CTS. Counsel for CTS is directed to cooperate with Red Devil's counsel to properly effect service on CTS, whether by agreeing to accept service on behalf of CTS, by agreeing to a waiver of service of process, or by providing more specific directions for the proper person or entity to be served to provide CTS with proper notice of this lawsuit.

## C.

CTS contends that the Northern District of Oklahoma is not a convenient forum for the parties to litigate this dispute, because the alleged conduct giving rise to the case occurred solely in Florida and relevant witnesses and evidence are also located in Florida. Dkt. # 11, at 4. Red Devil has not responded to CTS' request to transfer venue. Under 28 U.S.C. § 1404, a court may transfer a case to any judicial district in which it could originally have been filed "[f]or the convenience of parties and witnesses." The Tenth Circuit has identified several factors that a district court should consider in ruling on a motion to transfer:

> the plaintiff's choice of forum; the accessibility of witnesses and other sources of proof, including the availability of compulsory process to insure attendance of witnesses; the cost of making the necessary proof; questions as to the enforceability of a judgment if one is obtained; relative advantages and obstacles to a fair trial; difficulties that may arise from congested dockets; the possibility of the existence of questions arising in the area of conflict of laws, the advantage of having a local court determine questions of local law; and, all other considerations of a practical nature that make a trial easy, expeditious and economical.

Chrysler Credit Corp. v. Country Chrysler, Inc., 928 F.2d 1509, 1516 (10th Cir. 1991). When a party files a motion to transfer venue, the moving party has the burden to prove inconvenience to the parties and witnesses. Rivendell Forest Prods., Ltd., v. Canadian Pacific Ltd., 2 F.3d 990, 993 (10th Cir. 1993). Unless the moving party carries its burden to prove inconvenience to the parties and witnesses and the balance is "strongly" in favor of the moving party, the plaintiff's choice of forum should not be disturbed. Scheidt v. Klein, 956 F.2d 963, 965 (10th Cir. 1992). "Merely shifting the inconvenience from one side to the other . . . obviously is not a permissible justification for a change of venue." Id. A plaintiff's choice of forum is generally given significant deference, but this deference is lessened if the plaintiff does not reside in the judicial district or if the "facts giving rise

to the lawsuit have no material relation or significant connection to the plaintiff's chosen forum." Emp'rs Mut. Cas. Co. v. Bartile Roofs, Inc., 618 F.3d 1153, 1168 (10th Cir. 2010).

Even though Red Devil has failed to respond to CTS's request to transfer venue, the Court finds that CTS has not met its burden to show that transfer of venue is justified. At most, CTS has shown that the inconvenience to the parties is approximately equal regardless of whether the case proceeds in Oklahoma or Florida, and transfer of venue is not appropriate when it would merely shift the inconvenience from one party to the other. There is no dispute that it would be more convenient for CTS to litigate this matter in Florida, but CTS has not shown that this forum lacks a significant connection to the lawsuit or that CTS will be substantially inconvenienced by proceeding in this Court. The mere fact that CTS is located in Florida, and therefore that the goods were shipped to Florida, does not mean that the parties' controversy is a "local" controversy to Florida as CTS suggests. See Dkt. # 18, at 6. CTS' request to transfer this case to the Middle District of Florida is based on a series of unsupported assumptions about the nature of the parties's dispute and wholly ignores that fact that CTS knowingly and repeatedly engaged in business with an Oklahoma entity. Oklahoma courts have a significant interest in hearing a case concerning the alleged non-payment of a debt owed to an Oklahoma business.[1] Even though Red Devil failed to respond to CTS' argument concerning transfer of venue, CTS has not met its burden to show that it would be substantially more convenient for the parties to litigate this matter in a Florida court, and CTS' request to transfer venue to the Middle District of Florida is denied.

---

[1] The Court notes that the bulk of CTS' argument in support of transfer of venue is raised in its reply, and CTS devotes only one paragraph to this issue in its motion to dismiss. CTS should have raised its entire argument in its motion, not its reply, and CTS has less cause to complain about Red Devil's failure to respond to this argument when CTS did not clearly assert its full argument on this issue in its motion to dismiss.

**IT IS THEREFORE ORDERED** that Defendant CTS's Rule 12(b)(2) and 12(b)(5) Motion to Dismiss, or, Alternatively, to Transfer to the Middle District of Florida, and Incorporated Brief (Dkt. # 11) is **granted in part** and **denied in part**: the motion is granted as to defective service of process and is denied in all other respects.

**IT IS FURTHER ORDERED** that plaintiff shall re-serve process on CTS no later than **January 12, 2026**.  Counsel for CTS is directed to cooperate with plaintiff's counsel to ensure that service of process on CTS is proper.

**DATED** this 11th day of December, 2025.

_____
CLAIRE V. EAGAN
UNITED STATES DISTRICT JUDGE